[No. B155196. Second Dist., Div. Eight. Jan. 8, 2003.]

CATALINA CAR WASH, INC., et al., Plaintiffs and Appellants, v. DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT, Defendant and Respondent.

COUNSEL

Cozen O'Connor and Charles E. Wheeler for Plaintiffs and Appellants.

Agnes T. Barling and Anne P. Stevason for Defendant and Respondent.

OPINION

BOLAND, J.—

SUMMARY

This case presents the question whether an employer was insured against workers' compensation liability at the time of an inspection of its premises

by the Department of Industrial Relations, Division of Labor Standards Enforcement. We conclude coverage existed as a matter of law, even though evidence of insurance in the form of policy documents had not yet been issued by the insurer. As a consequence, the division's penalty assessment of $21,000 against the employer for being uninsured on the date of the inspection must be withdrawn and the judgment against the employer reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. On May 3, 2000, the Division of Labor Standards Enforcement (Division), represented by Deputy Labor Commissioner Diana Chen, conducted an inspection at Catalina Car Wash on Beverly Boulevard in Los Angeles. Chen asked to see proof Catalina had secured workers' compensation insurance coverage, as required by statute.[1] Catalina was unable to produce proof of coverage. Catalina's supervisor contacted its insurance agent, who faxed a "certificate of insurance." The certificate was not satisfactory, as it was marked "for information only" and listed an address in Anaheim. Chen then called the Workers' Compensation Insurance Rating Bureau, which had no record of coverage for Catalina's Beverly Boulevard location; the bureau's records also showed that coverage at the Anaheim address had expired December 1, 1999.

Since Catalina could not produce evidence of coverage on the date of the inspection, Chen issued a "stop order—penalty assessment" under Labor Code sections 3710.1 and 3722. Section 3710.1 requires issuance of a stop order when an employer has no workers' compensation insurance.[2] The stop order prohibits use of employee labor until the employer has secured coverage. Section 3722 requires issuance of a penalty assessment order at the time a stop order is issued. The penalty assessment order requires the uninsured employer to pay $1,000 per employee—in this case, $21,000—as an additional penalty for being uninsured at the time the stop order is issued.[3]

The following day, May 4, 2000, Catalina's insurer, Legion Insurance Company (Legion), issued a formal policy of insurance covering the period

---

[1]Labor Code section 3700 requires employers to "secure the payment of compensation" by "being insured against liability to pay compensation" or by obtaining approval to self-insure from the Director of the Department of Industrial Relations. (Lab. Code, § 3700, subds. (a) & (b).) Self-insurance is not at issue in this case, and we will therefore refer to section 3700 as requiring the employer to be insured.

[2]Section 3710.1 provides in part: "Where an employer has failed to secure the payment of compensation as required by Section 3700, the director shall issue and serve on such employer a stop order prohibiting the use of employee labor by such employer until the employer's compliance with the provisions of Section 3700. Such stop order shall become effective immediately upon service." (Lab. Code, § 3710.1.)

[3]Labor Code section 3722, subdivision (a), states: "At the time the stop order is issued and served . . . , the director shall also issue and serve a penalty assessment order requiring the

December 1, 1999, to December 1, 2000. Prior to Legion's issuance of the formal policy on May 4, the following events had occurred relating to Catalina's insurance:

- In September 1999, Legion issued a workers' compensation liability policy, No. WC6-0532150, to Catalina for the period September 18, 1999, to December 1, 1999, showing the insured's address in Anaheim.

- On December 11, 1999, the insurance agent, Western Carwash Insurance Agency, sent Catalina an insurance binder for the policy period December 1, 1999, to December 1, 2000, "evidencing coverage for Workers' Compensation Insurance, which is being issued pending receipt of your renewal policy." The agent's cover letter stated an invoice was enclosed for the deposit premium, and asked Catalina to "[p]lease remit payment within 10 days." The two-page insurance binder, dated December 4, 1999, showed Legion as the insurer, the location of the property on Beverly Boulevard, the policy period of December 1, 1999, to December 1, 2000, and limits of $1 million each for "employers liability limit," "disease-policy limit" and "disease-each employee." The binder also contained the notation "BOUND 12/01/99 TO 01/30/00 12:01 AM."

- Although the deposit premium was not paid within the requested 10-day period, Catalina made payments of $618 on January 6, 2000, and $1,577 on March 14, 2000, totaling well over half of the estimated annual premium.[4]

- At no time did Legion Insurance give Catalina notice of nonrenewal of the workers' compensation insurance policy Legion issued for the period September 18 to December 1, 1999.

On May 5, 2000, Deputy Commissioner Chen continued her investigation of the status of Catalina's insurance coverage.[5] She telephoned Legion and spoke to a customer service representative, who responded to Chen's inquiry about Catalina's policy by stating that the policy number Chen gave was a renewal number, "but the system shows that it was expired on December of

---

uninsured employer to pay to the director, for deposit in the State Treasury to the credit of the Uninsured Employers Fund, the sum of one thousand dollars ($1,000) per employee employed at the time the order is issued and served, as an additional penalty for being uninsured at that time."

[4]The formal policy issued on May 4, 2000, called for a deposit premium of $563.14, and a total estimated annual premium of $3,754.

[5]A penalty assessment order may be withdrawn where investigation reveals the employer was insured at the time of the order. (Lab. Code, § 3727.1.)

'99." Chen was told any other questions should be addressed in writing to Legion's underwriting department. Chen then faxed Legion, asking when Catalina had requested coverage, when the coverage information was entered into Legion's system, when the policy was effective, and the locations included in the policy.

Legion responded on May 9, 2000, telling Chen that Catalina requested coverage in November 1999 "because agent bound 12/4/99 with a policy period of 12/1/99 to 12/1/00." Legion's response stated the policy was entered into Legion's system on May 4, 2000, and that "[b]inding information was not received from agent until 5/3/00." Legion stated the policy was effective on December 1, 1999, and covered the Beverly Boulevard location.

Chen concluded her penalty assessment was appropriate, based on Legion's admission that Catalina's policy was not entered into Legion's system until after the date of the inspection, and so advised Catalina's owner, Masoud Aminpour. On May 10, 2000, Chen served another copy of her May 3, 2000 penalty assessment on Aminpour, and on May 19, 2000, Aminpour filed a request for an appeal hearing.

A hearing was held on November 11, 2000. The information related above was presented, and the Division also offered as an exhibit a letter and affidavit dated November 10, 2000, from Andrew S. Walsh, Legion's senior vice-president, secretary and general counsel. Walsh's affidavit stated that Catalina's actual renewal policy was not issued on a timely basis due to administrative error, but that Catalina "has had continuous workers' compensation insurance coverage with Legion Insurance Company since September 18, 1999." Walsh also testified by telephone at the hearing, and was questioned by the hearing officer about the nature of Legion's administrative error. He concluded his explanation[6] by stating: "It was, however, our intent—and we believe our obligation—to issue a renewal policy in the absence of having issued a nonrenewal notice. So this was just an administrative foul-up. We just didn't have the right people following up with the agent to get all the information necessary. It just sort of slipped through the

---

[6]Walsh testified: "And it was our intent, as far as I can tell, from our records, it was our intent to renew the policy for another period. Between the period of December 1st 1999, and May 3rd or 4th, I think, of May—of 2000, it was our responsibility to double-check with the insured or his agent to make sure that we had all the information necessary to issue a policy, that is, that we had the proper class codes, the proper addresses and all that sort of information, the proper FEIN number and that sort of thing, and I cannot tell from our records why exactly that didn't happen. It was either through a failure of the agent to send us the information upon request or our failure to follow up after we made a request. But for one reason or another we did not get the necessary information from the—from the insured's agent to put all the details down to get an actual policy issued."

cracks. But in the meantime it was always our position that there was coverage."

The hearing officer issued findings on January 19, 2001, affirming the penalty assessment. The hearing officer concluded the evidence established Catalina did not have a current workers' compensation insurance policy in effect on May 3, 2000. He pointed particularly to Legion's May 9 statement that the policy was entered into its system on May 4, 2000, and to Walsh's November 10, 2000 affidavit stating that, due to administrative error, the policy was not issued until May. He also cited *Woodline Furniture Mfg. Co. v. Department of Industrial Relations* (1994) 23 Cal.App.4th 1653 [29 Cal.Rptr.2d 17], for the proposition that employers cannot avoid penalties by purchasing a backdated insurance policy after the penalty has been assessed. Thus, "absent any conclusive, convincing or substantial evidence to the contrary, the Hearing Officer concludes that on May 3, 2000, [Catalina] did not have a current Worker's Compensation Insurance Policy, while employing 21 persons, as required by Labor Code Section 3700."

Catalina and Legion sought a writ of mandate. The trial court denied the writ, concluding that substantial evidence supported the hearing officer's finding that Catalina did not have workers' compensation insurance coverage in effect at the time of the May 3, 2000 inspection. The trial court emphasized that the insurance binder issued to Catalina in December 1999, evidencing coverage for the December 1, 1999 to December 1, 2000 policy period pending receipt of the renewal policy, bound the insurance agent only until January 30, 2000. Thus "the Binder expired, and coverage was not obtained thereafter until May 4, 2000, 1 day after the inspection . . . ."[7]

Judgment was entered on October 23, 2001, and Catalina and Legion Insurance filed this appeal.

## DISCUSSION

■     We conclude the hearing officer and the trial court erred as a matter of law in concluding Catalina was not insured against workers' compensation liability on May 3, 2000. The undisputed facts show that, while no documentary evidence of coverage existed until May 4, 2000, both insurer and insured intended Catalina's initial policy was to be renewed. As a legal matter, when an insurer fails to give timely notice of nonrenewal of a

---

[7]The trial court also observed that the information required for issuance of a policy was not provided to the insurer, and the deposit premium was not paid during the 10-day period mentioned in the agent's letter. However, Catalina made a payment on January 6, 2000, before the binder expired.

workers' compensation insurance policy, Insurance Code section 11664 mandates the policy "shall be continued . . . for a period of 60 days after the insurer gives the notice." (Ins. Code, § 11664, subd. (d).)[8] Because no notice of nonrenewal was ever given, Catalina's policy continued in effect as a matter of law.[9] It necessarily follows that Catalina may not be penalized "for being uninsured at [the] time" the stop order was issued. (Lab. Code, § 3722, subd. (a).)

The Division argues Catalina may not rely on Insurance Code section 11664, because it did not specifically identify section 11664 at the administrative hearing. However, Legion's general counsel clearly testified: "What happened here was we had an existing insured to whom we did not send a notice of nonrenewal, so we were legally obligated under California law to continue coverage. We had fully intended to continue coverage. It was just an administrative error that led us to—to not enter the information into our system on a timely basis." Indeed, Legion's position it was legally obligated to continue coverage was asserted several times at the administrative hearing.[10] Accordingly, this is not a case in which Catalina and Legion raised in

---

[8]Section 11664, which applies only to policies of workers' compensation insurance, provides in part: "(c) An insurer, at least 30 days, but not more than 120 days, in advance of the end of the policy period, shall give notice of nonrenewal, and the reasons for the nonrenewal, if the insurer intends not to renew the policy. [¶] (d) If an insurer fails to give timely notice required by subdivision (c), the policy of insurance shall be continued, with no change in its premium rate, for a period of 60 days after the insurer gives the notice." (Ins. Code, § 11664, subds. (c) & (d).)

[9]The trial court rejected Catalina's contention that it continued to have insurance coverage as a matter of law under Insurance Code section 11664, observing that "provisions applicable to the nonrenewal [of] an existing policy do not apply to the expiration of Binder coverage," citing Insurance Code section 382.5, subdivision (c). The cited provision states that expiration of coverage under a binder "shall not be considered a cancellation or nonrenewal of a policy of insurance within the meaning of any statute limiting the right to cancel or nonrenew a policy of insurance." However, a policy of insurance was issued and in effect until December 1, 1999, and it is that policy—not the binder—for which Legion failed to give notice of nonrenewal under section 11664. We see no reason to conclude that issuance of the binder, and Legion's subsequent failure to issue the policy described in the binder, somehow relieves Legion of the obligation under section 11664 to continue to insure Catalina until notice to the contrary is given. Moreover, section 382.5 on its face does not apply to the binder issued to Catalina: "For purposes of this section, 'binder' does not include, and this section does not apply to, any writing that conditionally or unconditionally obligates an insurer to provide . . . insurance in the amount of one million dollars ($1,000,000) or more." (Ins. Code, § 382.5, subd. (a).) The binder in this case specified coverage limits of $1 million.

[10]Walsh testified: "We did not issue a Notice of Nonrenewal. So failing that, we are obligated to stay on the risk." And: "I believe that the actual policy document was issued on May 4th but that it was—that we had actually, as a legal matter, bound the policy back in—on December 1st." And: "[I]t was our intent and their intent to have the coverage effective from December 1st, and I think that's evidenced by the fact that we never sent out a Notice of

court a legal theory never presented at the administrative hearing.[11] (See *NBS Imaging Systems, Inc. v. State Bd. of Control* (1997) 60 Cal.App.4th 328, 333-334 [70 Cal.Rptr.2d 237].)

The Division also argues, erroneously, that the penalty assessment is proper under principles stated in *Woodline Furniture Mfg. Co. v. Department of Industrial Relations, supra,* 23 Cal.App.4th 1653. In *Woodline,* the court upheld a penalty assessment in circumstances where "there was, in fact, no coverage" at the time the penalty was assessed, but where the employer later that day secured an insurer's agreement to issue a policy. (*Id.* at p. 1659.) The employer subsequently obtained a retroactivity endorsement from the insurer, advancing the effective time of the policy by 17 hours, and thus making the policy retroactively effective at the time the stop order was issued. The court quite properly refused "to permit an employer to avoid a penalty by obtaining retroactive insurance after issuance of a stop order . . . ." (*Ibid.*)

*Woodline* does not assist the Division. The court merely applied the statute, which requires a penalty assessment if the employer is "uninsured at that time"—that is, "[a]t the time the stop order is issued . . . ." (Lab. Code, § 3722, subd. (a).) In *Woodline,* the employer admitted to the Division's inspector that he did not, at that time, have coverage. (*Woodline Furniture Mfg. Co. v. Department of Industrial Relations, supra,* 23 Cal.App.4th at p. 1657.) Indeed, the employer had not had coverage for the previous six months. (*Id.* at p. 1659.) This case is entirely different. There is no question of retroactive or backdated coverage. As we have explained, Catalina was insured as a matter of law, because Legion sent no notice of nonrenewal and was therefore legally obligated to continue Catalina's coverage. Moreover, unlike the circumstances in *Woodline,*[12] all equitable considerations support the conclusion that Catalina's insurance coverage was never interrupted:

Nonrenewal." And: "I can absolutely, positively verify that we never sent out a Nonrenewal Notice, and we would have been obligated to do that, so . . . ." Moreover, section 11664 of the Insurance Code applies only to policies of workers' compensation insurance. It may reasonably be assumed the hearing officer in a workers' compensation insurance matter would have inquired had he been unaware of the statutory basis for Legion's repeated statements it was legally obligated to continue coverage.

[11]The Division also argues Insurance Code section 11664 applies as between Legion and Catalina, but does not apply as to the Division, which is charged with determining employer compliance with the Labor Code. No legal authority is cited for this proposition, which is clearly without merit.

[12]The court in *Woodline* observed that, "[f]rom an equitable perspective, this would be a different case if there was anything in the record to suggest Woodline had at least tried to obtain retroactive coverage for the six months it was uninsured." (*Woodline Furniture Mfg. Co. v. Department of Industrial Relations, supra,* 23 Cal.App.4th at p. 1659.) The court "express[ed] no opinion about whether the result ought to be the same where, by reason of a

both insurer and insured intended coverage to continue, Catalina was paying for coverage, and the insurer was admittedly responsible for failing timely to issue policy documents as intended.

In sum, since Catalina was insured at the time the stop order was issued, no basis exists for a penalty assessment, and the judgment against Catalina must be reversed. However, we decline Catalina's request to remand the case for a determination whether the Division's decision was arbitrary and capricious under Government Code section 800.[13] While the decision was legally erroneous, we see no basis upon which it could be found arbitrary or capricious. (See *American President Lines, Ltd. v. Zolin* (1995) 38 Cal.App.4th 910, 934 [45 Cal.Rptr.2d 370] [" ' "phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason, a stubborn insistence on following unauthorized conduct, or a bad faith legal dispute" ' "; attorney fees may not be awarded " ' "simply because the administrative entity or official's action was erroneous, even if it was "clearly erroneous" ' "].)

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court with instructions to issue a writ directing the Division of Labor Standards Enforcement to set aside its decision and withdraw the penalty assessment against Catalina. Catalina is to recover its costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

---

retroactive policy, coverage is obtained for the entire period during which an employer was uninsured." (*Id.* at p. 1659, fn. 5.)

[13]Section 800 allows a complainant who prevails in an action for review of an administrative determination to collect reasonable attorney fees "where it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity . . . ." (Gov. Code, § 800.)