[Civ. No. 58454. Second Dist., Div. Four. Feb. 17, 1981.]

BEL MAR ESTATES et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION,
Defendant and Respondent.

COUNSEL

Latham & Watkins and George A. Rice for Plaintiffs and Appellants.

George Deukmejian, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Peter H. Kaufman, Deputy Attorney General, for Defendant and Respondent.

OPINION

KINGSLEY, J.—Appellants (hereafter petitioners) appeal from a judgment denying their petition for a writ of mandate in a matter involving a permit for a real estate development within the coastal zone. We affirm the judgment.

Petitioners are the owners of a large tract of land in the Santa Monica Mountains, overlooking the Pacific Coast Highway. They desire to subdivide 531 acres of that property, into 174 single family residential lots, averaging 2.3 acres each, together with a 5-acre parcel for stables and pasturage and 2 open-space areas. The plan will involve construction of a new 4-lane highway in Piedra Gorda Canyon, filling that canyon by from 30 to 90 feet. The total grading, including filling of the canyon, grading lot sites, construction of other roads and similar

related development of the proposed tract will involve 3.6 million cubic yards of material. Since the home sites are to be on the top of ridges, the houses will restrict ocean view from other parts of the Santa Monica Mountains and view of the mountains from significant parts of the ocean and ocean frontage.

The developers have secured approval of the proposed subdivision from the County of Los Angeles and their application for a permit was approved by the Regional Coastal Commission.[1] On appeal to the California Coastal Commission the application was denied. The present action in administrative mandate was brought and mandate was denied. Petitioners have appealed; we affirm.

In this court, petitioners make three contentions: (a) that the California Commission had lost jurisdiction to act on the appeal since more than 21 days had elapsed after the hearing before that commission; (b) the grounds on which the commission denied the application were in error; and (c) that the commission should not have denied the application entirely. We reject all three contentions.

I

The matter came timely on for hearing before the commission on January 17, 1978. At the opening of the hearing, the chairman, in accordance with the commission's published rules of procedure, announced that each side would be allowed 10 minutes for oral argument and then the hearing would be continued pending the filing and service of the staff report on the application. After the oral argument, the chairman announced that the matter was continued until February 14th for that report. No objection to that procedure was made either by any member of the commission or by the applicant, although that continuance was for more than 21 days. On February 9th the applicant requested, and was granted, a continuance of the matter in order for it to file additional data in support of the application and a second similar continuance was granted. The matter finally came before the commission on May 17th. Applicant was then asked if it desired further argument, waived argument and asked for a vote. The vote, as we have said above, was adverse to the application.

---

[1] The Regional Commission imposed some conditions on its approval. The petitioners do not here contest those conditions.

■ Section 30622 of the Public Resources Code,[2] provides: "A regional commission or the commission shall act upon the coastal development permit application or an appeal within 21 days after the conclusion of the hearing pursuant to Section 30621. Any action by a regional commission shall become final after the 10th working day, unless an appeal is filed with the commission within such time." Section 30625 provides that if the commission does not act within the time limit so specified, the decision of the regional commission shall become final. Relying on those statutory provisions, petitioners here contend that the commission had lost jurisdiction over the appeal by February 8th and that its application was, on that date, approved as decided by the regional commission. We disagree.

It is conceded that the commission, having opened hearings within the 42 days provided in section 30621 of the code, had power to continue the hearing, subject only to the requirement in section 65952 of the Government Code, setting an overall period of 180 days for action. The contention here is only that, since no formal vote of the commission for the continuance was ever called for by the chairman, or had, the original continuance of more than 21 days was not "by" the commission. That contention is frivolous.

Clearly, the chairman's announcement was agreeable to all of the members of the commission. No objection was raised by the petitioners, represented on January 17th by counsel. If petitioners desired a formal vote, they had only to ask for it. A party cannot sit idly by and permit action to be taken and later say that it had not consented. Even in cases under section 1358 of the Penal Code, involving a constitutional right to a speedy trial, silence on the part of a defendant represented by counsel is regarded as a consent to a continuance. (See Witkin, Cal. Criminal Procedure (1963) § 316, p. 310.)

The contention here made by the petitioners is a frivolous afterthought. We reject it.

## II

■ Petitioners attack, as not conforming to the policy of the statute, all of the grounds given by the commission for denying the application. We need not, in this opinion discuss all of those grounds.

---

[2] All statutory references herein, unless otherwise indicated, are to the Public Resources Code.

The record is replete with evidence that the proposed development would create a major increase in the traffic using Pacific Coast Highway. It would involve at least 174 additional vehicles using that highway and requiring a stop signal at the point such traffic entered and left the highway. In addition, the development would involve the probability not only of twice that number of "second" cars for each home, but a steady flow of visitors, delivery vehicles and similar supporting traffic. The record shows that, without the proposed development, Pacific Coast Highway is already overused, with frequent bumper-to-bumper delays. We cannot say that the commission improperly regarded that effect as requiring a denial or that the trial court erred in agreeing with that conclusion.[3]

It is also clear that the proposed development involved a major change in the natural environment, removing natural vegetation, leveling hills and destroying a natural and scenic canyon. That that effect fell within the provisions of section 30251 of the code is without question.[4]

The same adverse effect of the proposed development falls within the requirement of section 30240 that the natural habitat of the area not be excessively damaged.[5]

---

[3]Section 30254 of the code provides: "New or expanded public works facilities shall be designed and limited to accommodate needs generated by development or uses permitted consistent with the provisions of this division; provided, however, that it is the intent of the Legislature that State Highway Route 1 in rural areas of the coastal zone remain a scenic two-lane road. Special districts shall not be formed or expanded except where assessment for, and provision of, the service would not induce new development inconsistent with this division. Where existing or planned public works facilities can accommodate only a limited amount of new development, services to coastal dependent land use essential public services and basic industries vital to the economic health of the region, state, or nation, public recreation, commercial recreation, and visitor-serving land uses shall not be precluded by other development."

[4]Section 30251 provides: "The scenic and visual qualities of coastal areas shall be considered and protected as a resource of public importance. Permitted development shall be sited and designed to protect views to and along the ocean and scenic coastal areas, to minimize the alteration of natural land forms, to be visually compatible with the character of surrounding areas, and, where feasible, to restore and enhance visual quality in visually degraded areas. New development in highly scenic areas such as those designated in the California Coastline Preservation and Recreation Plan prepared by the Department of Parks and Recreation and by local government shall be subordinate to the character of its setting."

[5]Section 30240 provides: "(a) Environmentally sensitive habitat areas shall be protected against any significant disruption of habitat values, and only uses dependent on such resources shall be allowed within such areas. [¶] (b) Development in areas adjacent to environmentally sensitive habitat areas and parks and recreation areas shall be

In short, we cannot say that the commission, and the trial court, erred in regarding the cumulative effect of this large development as such as to fall without the permitted development that the statute envisages.

## III

■ As we understand a final contention made by petitioners it is that, since the statute does require the commission to balance the environmental impact of a proposed development against the public need for additional housing, it was error to deny the application in its entirety, but the commission should, at the minimum, have imposed conditions on the applicant that would reduce the environmental impact without prohibiting any development at all.

That contention is without basis in fact. While, in some cases, the commission may find that, with relatively minor changes, a proposal may be modified so as to reduce effectively the environmental impact, we know of no requirement that the commission must, in every case, undertake to redesign a proposal so as to become acceptable. The developer knows, better than the commission, how many, or which, changes would be economically feasible. In this case, faced with the staff report that recommended denial, the developer chose to stand on its proposal as made; it had the opportunity, by May 17th, if not during the two preceding months, to offer any revisions it was willing to accept; it chose not to avail itself of that opportunity. The denial of the present proposal does not act to bar petitioners from submitting a new and different scheme of development if they believe that they could operate under such revised proposal. The area in question has not been forever removed from residential development. All that is here involved is a finding, supported by the record, that the present scheme is not legally permissible.

The judgment is affirmed.

Files, P. J., and Early, J.,* concurred.

---

sited and designed to prevent impacts which would significantly degrade such areas, and shall be compatible with the continuance of such habitat areas."
*Assigned by the Chairperson of the Judicial Council.