[No. D038323. Fourth Dist., Div. One. May 8, 2003.]

ENCINITAS COUNTRY DAY SCHOOL, INC., et al., Plaintiffs and Appellants, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Appellant;
SAN ELIJO LAGOON CONSERVANCY, Real Party in Interest and Appellant.

[No. D040300. Fourth Dist., Div. One. May 8, 2003.]

ENCINITAS COUNTRY DAY SCHOOL, INC., et al., Plaintiffs and Respondents, v.
CALIFORNIA COASTAL COMMISSION, Defendant;
SAN ELIJO LAGOON CONSERVANCY, Real Party in Interest and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV .

**COUNSEL**

Lewis, D' Amato, Brisbois & Bisgaard, Lewis Brisbois Bisgaard & Smith, Martin J. Mullen, Jeffry A. Miller; Law Offices of Michael T. Larsen, Michael T. Larsen; Howard, Rice, Nemerovski, Canady, Falk & Rabkin and Richard C. Jacobs for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, and G. R. Overton, Deputy Attorney General, for Defendant and Appellant.

Johnson & Cross, Kevin K. Johnson and Jared Phil Hanson for Real Party in Interest and Appellant.

**OPINION**

**McCONNELL, J.**—In the published portion of this opinion, we address the appeal by the California Coastal Commission (Commission) and the San Elijo Lagoon Conservancy (Conservancy) of the trial court's issuance of a writ holding the Commission's denial of a permit was invalid because the Commission failed to timely rule within the 49-day jurisdictional period of

Public Resources Code section 30625[2] whether a "substantial issue" existed such that the Commission should hear the appeal of the permit.[3] We hold the Commission's action in this case of merely opening the hearing within the 49-day period and continuing the matter beyond the 49-day period failed to comply with section 30625. The Commission was required to determine within the 49-day period whether a substantial issue existed, including whether the project was within the geographical boundaries of the Commission's appellate jurisdiction. We therefore affirm the issuance of the writ.

In the unpublished portion of this opinion, we find it unnecessary to reach the question of whether the project was within the Commission's geographic appellate jurisdiction on the basis the project was located between the first public road (Manchester Avenue) and the sea (San Elijo Lagoon) due to our conclusion the Commission lost jurisdiction by failing to determine the substantial issue question within the 49-day jurisdictional period. We also reject the appeal by the project's proponents—Encinitas Country Day School, Inc. (ECDS), Kathleen Porterfield, and M&M Development Corporation (hereafter collectively referred to as ECDS)[4]—of their inverse condemnation claim on the basis ECDS failed to establish the denial of the permit had resulted in a loss of all economically viable use of the property or that the inverse condemnation claim was ripe for adjudication. We thus affirm the judgment.

Additionally, in the unpublished portion, we reverse the Conservancy's appeal of the trial court's postjudgment order partially lifting a stay of the judgment on appeal on the basis the appeal is moot and we remand to the trial court to dismiss ECDS's motion to lift the stay.[5]

## Factual and Procedural Background

In 1998, ECDS sought approval from the City of Encinitas (the City) to build a 432-student elementary school on a 20-acre parcel of undeveloped

---

[2]All statutory references are to the Public Resources Code unless otherwise specified.

[3]Section 30625, subdivision (b) provides, in pertinent part: "The commission shall hear an appeal unless it determines the following: [¶] (1) With respect to appeals pursuant to subdivision (a) of Section 30602, that no substantial issue exists as to conformity with Chapter 3 (commencing with Section 30200)."

[4]Kathleen Porterfield is the director and representative of ECDS. M&M Development Corporation is a limited liability corporation that owns the underlying property, and has entered into an agreement for a 99-year lease with ECDS.

[5]The postjudgment stay was raised in the appeal, *Encinitas Country Day School, Inc. v. San Elijo Lagoon Conservancy* (case No. D040300). We ordered that appeal consolidated with *Encinitas Country Day School, Inc. v. California Coastal Commission* (case No. D038323) which raised the jurisdictional and inverse condemnation issues.

property located on Manchester Avenue southeast of the intersection of Manchester Avenue and El Camino Real in the City. The property is located between Manchester Avenue and San Elijo Lagoon. Between the project site and the lagoon is an undeveloped parcel of land. The project site lies to the east of the Pacific Ocean. Between the project site and the Pacific Ocean are Highway 101 and, further east, Interstate 5.

Because the property was located within the City's local coastal plan, ECDS was required to obtain a coastal development permit from the City. In September 1998, after circulation of a mitigated negative declaration on the proposed project's environmental impacts and after a public hearing, the City's planning commission approved the project with conditions. The approval was appealed to the city council. Following a public hearing in November 1998, the city council approved the project with conditions.

The City's approval was appealed to the Commission on the basis that substantial issues existed as to the project's conformity with the City's local coastal plan. The appeals were received by the Commission on December 10, 1998. On December 14, 1998, the Commission published a notice stating the matter would be considered at the Commission's January 1999 meeting and notified the parties they were required to deliver copies of all relevant documents to the Commission's San Diego office within five working days of receiving the notification of appeal. By December 17, 1998, the City had transmitted to the Commission the last remaining files in the case. The City had already sent to the Commission the administrative record with all exhibits for the city council's November 1998 hearing, the resolution approving the project, the certified environmental assessment, and the project plans. The documents received on December 17, 1998, consisted of the United States Fish and Wildlife Service/California Department of Fish and Game approvals of "4(d) permit issuance" (i.e., a permit to allow ECDS to purchase endangered species habitat land to make up for loss of such habitat by its project), the public notification list, hearing speaker slips, and legal notifications for the planning commission and city council hearings.

On December 17, 1998, the Commission staff (the staff) issued a report noting that a hearing was required to be set within 49 days of the date of appeal, stating that it had not yet received all relevant documents from the City, and recommending the Commission open and continue the matter at its January 1999 meeting.

The Commission met on January 13, 1999, at which time the Commission opened the ECDS matter and continued it to its February 1999 meeting

without considering any issues, including whether a substantial issue existed, the scope of its appellate jurisdiction, or the merits of the appeals.

In January 1999, the staff prepared a report recommending that a substantial issue be found as to whether the project complied with the City's local coastal plan and therefore the appeals should be heard. The report stated the Commission had appellate jurisdiction over the project because the project was located between the first public road (Manchester Avenue) and the sea (San Elijo Lagoon). (See Cal. Code Regs., tit. 14, § 13577.) Prior to this determination of appellate jurisdiction, and prior to the actual receipt of the appeals, the staff believed that the Commission's appellate jurisdiction would be limited to 100 feet from wetlands.

The staff report noted that the development of the school pursuant to a major use permit would result in seven times more traffic than if the property were developed under the current rural residential zoning that allowed up to 10 residences. The staff report recommended denying the coastal development permit because the City had failed to consider the impact of the increased traffic on the Interstate 5/Manchester Avenue interchange and how the increased traffic would add pressure to widen Manchester Avenue and the Interstate 5/Manchester Avenue interchange southward toward the San Elijo Lagoon. Such widening conflicted with the City's local coastal plan of avoiding widening Manchester Avenue or the Manchester Avenue/Interstate 5 interchange on the south, lagoon side. The staff also noted that the City had failed to consider the cumulative impact of the ECDS project given other developments approved through the major use permit process along the Manchester Avenue corridor. These approvals had resulted in a greater intensity of development than what was called for in the City's certified local coastal plan. Additionally, the staff recommended denial because the City had failed to consider other alternatives to the project and to filling wetlands for an expansion of Manchester Avenue as part of the project. The staff noted that the filling of the wetlands conflicted with the City's local coastal plan policies of protecting wetlands.

At the Commission's meeting on February 4, 1999, 56 days after the appeals were filed, the Commission adopted the staff's recommendations and denied approval of the project.

ECDS moved for reconsideration on the basis that Manchester Avenue was not the first public road from the sea. ECDS argued that prior to the designation in this case of Manchester Avenue as the first public road from

the sea, the Commission had never asserted jurisdiction on this basis.[6] Nor had the Commission or the City previously drafted or adopted a map showing Manchester Avenue as the first public road from the sea. Instead, the Commission's mapping unit had created a map showing Highway 101 as the first public road from the sea (the Pacific Ocean). This map had never been certified but had been used by the City for about 20 years.[7] Disputed evidence was submitted to the Commission as to whether San Elijo Lagoon was an arm of the sea east of Interstate 5 where the ECDS property is located, e.g., whether it was subject to tidal action.[8] The Commission denied ECDS's motion for reconsideration at its May 1999 meeting.

In June 1999, ECDS filed a first amended petition for writ of mandate and complaint for a preliminary and permanent injunction, declaratory relief, and for inverse condemnation. The petition and the complaint were bifurcated, with the petition proceeding first before Judge Quinn.

Judge Quinn granted the writ of mandate and ordered that the Commission's denial of the coastal development permit be set aside and the City's approval of ECDS's coastal development permit be final. The court ruled the Commission's denial of the permit was invalid because the Commission had failed to timely rule within the 49-day jurisdictional period of section 30625 and ECDS had not waived the 49-day limit. The court rejected the Commission's argument that it met the 49-day jurisdictional time limit by scheduling

---

[6]The Commission asserts that Manchester Avenue had been recognized as the first public road from the sea in its approval of other projects in the area. The record does not support this contention. The record shows that jurisdiction in the other projects was asserted because development was occurring in the flood plain or on wetlands.

[7]California Code of Regulations, title 14, section 13576, subdivision (a) provides: "In conjunction with final Local Coastal Program certification or the delegation of coastal development permit authority pursuant to Public Resources Code Section 30600.5, whichever occurs first, the Commission shall, after public hearing, adopt a map or maps of the coastal zone of the affected jurisdiction that portrays the areas where the Commission retains permit authority pursuant to Public Resources Code Sections 30603[, subdivision] (a)(1) and (a)(2), or 30600.5[, subdivision] (d). These maps shall be drawn based on the criteria for permit and appeal boundary determinations, set forth in [California Code of Regulations, title 14, s]ection 13577 . . . , and will serve as the official maps of the Commission's permit and appeal jurisdiction. The Commission, in consultation with the local government, shall update these maps from time to time, where changes occur in the conditions on which the adopted maps were based, or where it can be shown that the location of the mapped boundary does not adequately reflect the intended boundary criteria. Revisions of the adopted maps shall be based on precise boundary determinations made using the criteria set forth in [California Code of Regulations, title 14, s]ection 13577. The revised maps shall be filed with the affected jurisdiction within 30 days of adoption by the Commission. . . ."

Note that all further references to the California Code of Regulations are to title 14 unless otherwise specified.

[8]Note that the Commission's decision to deny reconsideration was not based on a resolution of conflicting evidence as to whether San Elijo Lagoon was part of the sea, but on whether ECDS should have pursued this issue at the February hearing.

a hearing within the 49-day period; the court ruled that the Commission was required within the 49-day jurisdictional period to resolve, at a minimum, the question of whether there was a substantial issue as to the project so as to merit the Commission hearing the appeals.

The trial judge also ruled that the Commission's finding that it had appellate jurisdiction over the development on the basis Manchester Avenue was the first public road from the sea was not supported by substantial evidence. She noted the Commission had never before indicated Manchester Avenue was the first public road from the sea; "[t]o the contrary, all documents that existed and the uniform practice of the Commission reflect that the Commission acquiesced to the proposition that Old Highway 101 was the first public road as shown on the draft map of the area prepared by the Commission's Mapping Unit." Judge Quinn concluded it was improper for the Commission to assert Manchester Avenue was the first public road from the sea at a time when its "Mapping Unit had not even issued such an opinion or 'draft' map" showing Manchester Avenue as the first public road from the sea.

The inverse condemnation matter was heard before Judge LaVoy. Judge LaVoy ruled that although the Commission was wrong in its determination that it had complied with the 49-day jurisdictional limit, the Commission's position was not unreasonable "to the extent that perhaps some rational attorney could believe that the arguments being pursued had merit." He also stated the Commission's actions at the February 4, 1999 and May 12, 1999 hearings were not so arbitrary and unreasonable " 'as to lead to the conclusion that they were taken for no purpose other than to delay the development project before it.' " (Quoting *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1024 [73 Cal.Rptr.2d 841, 953 P.2d 1188] (*Landgate*).) Judge LaVoy, however, found the staff acted arbitrarily and unreasonably in asserting appellate jurisdiction based on Manchester Avenue being the first public road from the sea. The trial court noted that the Commission had not previously designated Manchester Avenue as the first public road from the sea; that "[a]s early as 1981 and at each subsequent remapping in 1988 and 1995, the . . . Commission itself consciously adopted Highway 101 as the first public road"; that since 1981, the draft map showing Highway 101 as the first public road from the sea had been relied upon by the public, the City, and the Commission; and that ECDS was "entitled to rely upon, and did rely upon, the repeated public statements of the Commission and the staff with regard to the limited appellate jurisdiction of the Commission [i.e., based on the presence of wetlands on the property]." Judge LaVoy also noted that the staff relied "on the fact that since

1981, the word 'draft' on the map allowed it to arbitrarily change the jurisdictional lines on the map whenever it decided to do so," thereby "completely bypassing [California Code of] Regulation[s, section] 13576 [detailing procedures for the adoption of jurisdictional maps]." The court found it difficult "to think of a more unreasonable and arbitrary position" than that adopted by the staff, and concluded that many of the staff's reasons "for its actions were pretextual, and that the staff's actions were in fact taken for no purpose other than to delay the project."

Nonetheless, Judge LaVoy determined that the Commission was "not bound by the acts of its staff members" and concluded "based on the legal conclusion that the acts of the staff may not be attributed to the Commission . . . , the extraordinarily high standard for determining that error by the Commission constitutes a regulatory-delay 'taking,'" an award of damages for inverse condemnation against the Commission was precluded. Judge LaVoy also stated that ECDS had "been denied sufficient economic use of the subject property based on the limited facts of this case, such that the Commission's actions would have constituted a taking if this Court had not found that the legal arguments advanced in support of the Commission's erroneous conclusions were not completely unreasonable from a legal standpoint."

## DISCUSSION

## I

### *49-day Jurisdictional Rule*

■ The Commission contends the trial court erred in finding the Commission lost jurisdiction when it merely opened and continued the hearing on the ECDS appeals within the 49-day jurisdictional period and did not consider whether the appeals involved a substantial issue, the scope of its appellate jurisdiction, and did not reach the merits of the appeals until 56 days after the appeals were filed.[9]

Section 30621, subdivision (a) provides that "[a] hearing on any coastal development permit application or an appeal shall be set no later than 49 days after the date on which the application or appeal is filed with the commission." If the Commission fails to approve, modify or deny a proposed development "and if no action is taken within the time limit specified

[9]The Commission contends that ECDS waived the time period. We disagree. The record shows that prior to the Commission's January meeting, ECDS wrote to the Commission, objecting to the Commission not deciding the substantial issue question at its January meeting. ECDS also requested to speak at the January meeting but was not allowed to do so.

in Section[] 30621 . . . , the decision of the local government . . . shall become final, unless the time limit in Section 30621 . . . is waived by the applicant." (§ 30625, subd. (a).) This short time limit is "designed to avoid unnecessary bureaucratic delay." (*Coronado Yacht Club v. California Coastal Com.* (1993) 13 Cal.App.4th 860, 871 [17 Cal.Rptr.2d 10] (*Coronado Yacht Club*).)

Here, the Commission, relying on our decision in *Coronado Yacht Club, supra,* 13 Cal.App.4th 860, interpreted the 49-day rule as being satisfied so long as it opened and continued the hearing within 49 days of the appeals being filed. Not only did the *Coronado Yacht Club* case not so hold, the case is also clearly distinguishable. In *Coronado Yacht Club* the issue was whether the Commission complied with the 49-day rule when the Commission during the 49-day period decided whether the appeal raised a substantial issue and therefore should be heard (see § 30625, subd. (b)) but continued the hearing on the merits of the appeal to a date beyond the 49-day period. We found reasonable the Commission's interpretation of the statute's requirement that a hearing be " 'set' to mean to be 'held' within 49 days of the filing of the appeal, rather than merely being 'scheduled.' " (*Coronado Yacht Club*, at p. 871.) "[M]indful [that] the statutory scheme provides for but one public hearing on an appeal," we held that "the Commission's administrative construction is reasonable, that it need only to open the hearing and if three commissioners desire a debate on the question of substantial issue, it need only resolve the matter of its jurisdiction and then continue the matter in a timely fashion that will guarantee its timely action on the appeal consistent with the implied legislative intent to avoid bureaucratic delay." (*Ibid.*) We observed that "[t]o require the Commission to debate and vote on whether the appeal raises a substantial issue sufficient to consider the merits of the permit application de novo but prohibit it from continuing the matter beyond the 49-day limitation in order to obtain full briefing from its staff and permit meaningful oral argument and testimony from the parties would improvidently promote form over substance." (*Ibid.*) In the course of our discussion, we also noted that "[a]rguably, the Commission could have interpreted section 30621 to simply require it to 'schedule' or 'calendar' the hearing within 49 days after the filing of the appeal, but not commence it within that time period," but noted the Commission had not done that either in its regulations or in the particular proceeding and that such an interpretation would not be consistent with the legislative intent of avoiding bureaucratic delay. (*Ibid.*)

Thus, contrary to the Commission's argument, the *Coronado Yacht Club* case does not support its position that it is sufficient only to "calendar" or

"open" a case within 49 days of the filing of the appeal but not begin to consider any issues relating to the case. In *Coronado Yacht Club* we approved of a procedure where the Commission decided, at a minimum, whether it had jurisdiction within the 49-day period and specifically observed that a procedure like the one used here would be inconsistent with the Legislature's intent. We make it plain here: the Commission is required, at a minimum, to make the determination whether a substantial issue exists, i.e., whether the appeal raises a substantial issue meriting an appellate hearing, within the 49-day limitation period.

This substantial issue determination necessarily includes a determination whether the project lies within the jurisdictional boundaries of the Commission's appellate jurisdiction. If the project does not lie within the geographical boundaries of the Commission's jurisdiction, obviously the case involves no substantial issue meriting the Commission's hearing the appeal. Thus, in this case, the question whether the ECDS project was within the Commission's appellate jurisdiction because it was located between the first public road and the sea was required to be addressed at the January hearing.

██  The Commission also argues that merely scheduling a hearing within 49 days was appropriate in this case because the Commission did not receive all the relevant materials from the City with sufficient time to permit it to determine whether there was a substantial issue. (See Cal. Code Regs., § 13112.)[10] The record shows that on December 17, 1998, the staff recommended the matter be merely scheduled for the January meeting and be heard at a later date because, at the time the staff recommendation was written, the staff did not have all of the City's permit files. At the January 13, 1999 meeting, the staff testified they had received only a portion of the file from the City. The record, however, shows that prior to the preparation of the report, the City had delivered to the Commission the bulk of the record. As of December 17, 1998, the City had delivered the last remaining files which consisted of a few minor documents, i.e., notifications for the planning commission and city council hearings, speaker slips for the city council hearing, and approvals from the state and federal offices of wildlife agencies relating to issuance of a "4(d) permit." All of the documents were

---

[10]California Code of Regulations, section 13112, subdivision (a), in pertinent part, provides: ". . . Upon receipt of a Notice of Appeal the local government shall refrain from issuing a development permit for the proposed development and shall, within five (5) working days, deliver to the executive director all relevant documents and materials used by the local government in its consideration of the coastal development permit application. *If the Commission fails to receive the documents and materials, the Commission shall set the matter for hearing and the hearing shall be left open until all relevant materials are received.*" (Italics added.)

delivered, as required, within five working days of the notice of appeals, which had been filed on Thursday, December 10, 1998.

While it may be true, as the Commission argues, that the staff may have prepared its report early on December 17, 1998, prior to the delivery of the last batch of documents from the City, this argument ignores the fact that the record reflects that the bulk of the documents and all the key documents had been delivered to the Commission's office prior to December 17. At best, the staff report was misleading when it indicated that "all relevant documents and materials regarding the subject permit" had not been received; while all documents may not have been received, all the relevant documents were in the staff's possession. Moreover, even if the staff report was technically true in that *all* the documents had not been received as of the time the staff wrote the report, it does not excuse the staff from essentially imposing a cut-off date of December 16, a mere two days after the notification of the appeals and the request for documents was sent to the City. Nor does it excuse the staff from updating its report and recommendation upon the timely receipt of the last of the materials by the end of business on December 17, within hours after the staff report was written.

The Conservancy contends the Commission meets only once per month and, depending on the timing of the filing of an appeal, it may be extremely difficult for the staff to review an appeal, particularly if the record is long (here, 1,500 pages), as well as to make a full report within the 49-day period. Therefore, it is argued, section 30621 must be construed as allowing the Commission to merely schedule a hearing within the 49-day period. As noted above, such a position is inconsistent with the legislative intent that bureaucratic delay be avoided. Further, the Commission points to nothing in the statutes or regulations that would preclude the staff, if its time were restricted by the timing of the appeals, from preparing an abbreviated report focusing on the more limited substantial issue question. (See Cal. Code Regs., § 13115, subd. (a) ["At the meeting next following the filing of an appeal with the Commission or as soon thereafter as practical, the executive director shall make a recommendation to the commission as to whether the appeal raises a significant question within the meaning of [section 30625, subdivision (b)]"].) Nor does the record in this case present the difficult situation suggested by the Commission and the Conservancy.

The Conservancy argues that requiring the Commission to decide, at a minimum, the substantial issue question within the 49-day period will result in denying "the public and interested parties the benefit of 'weeding out' a

substantial number of cases." We find this argument unpersuasive. Nothing in this record nor as a matter of common sense suggests that the process of weeding out unmeritorious cases would be eliminated by enforcing a requirement that the Commission, at a minimum, determine the substantial issue matter within the 49-day period; the process of screening out unmeritorious cases does not require an exhaustive, unduly time-consuming review of the administrative record nor preparation of a detailed report.

In sum, we conclude the Commission lost jurisdiction to hear the appeals when it failed, at a minimum, to decide the substantial issue question including whether the project was within the geographical boundaries of its appellate jurisdiction within the 49-day jurisdictional period.

II-IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. The order is reversed and remanded to the trial court to dismiss as moot. The parties are to bear their own costs on appeal.

Kremer, P. J., and Haller, J., concurred.

Petitions for a rehearing were denied June 5, 2003, and the petition of plaintiffs and appellants and real party in interest for review by the Supreme Court was denied July 23, 2003. Brown, J., did not participate therein. Kennard, J, and Werdegar, J., were of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 575.