[No. B201517. Second Dist., Div. Seven. Oct. 21; 2008.]

MT. HOLYOKE HOMES, LP, et al., Plaintiffs and Respondents, v. CALIFORNIA COASTAL COMMISSION, Defendant and Appellant, BARBARA SCHELBERT, Real Party in Interest and Appellant.

**COUNSEL**

Edmund G. Brown, Jr., Attorney General, J. Matthew Rodriquez, Assistant Attorney General, and John A. Saurenman, Deputy Attorney General, for Defendant and Appellant.

John B. Murdock for Real Party in Interest and Appellant.

Jeffer Mangels Butler & Marmaro and John M. Bowman for Plaintiffs and Respondents.

Pacific Legal Foundation, Paul J. Beard II and Damien M. Schiff as Amicus Curiae on behalf of Plaintiffs and Respondents.

OPINION

**PERLUSS, P. J.**—Barbara Schelbert and the California Coastal Commission (Commission) appeal from the superior court's order granting the petition for writ of administrative mandamus filed by Mt. Holyoke Homes, LP (MHH), Darla Jones and Stanley Jones and directing the Commission to set aside its decision disapproving the parcel map and coastal development permit approved by the City of Los Angeles (City) for MHH's development of a three-lot subdivision on the ground the Commission had lost its jurisdiction by failing to act in a timely manner. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Proposed Project and Proceedings Before the City*

Darla Jones owns an undeveloped parcel of land on Mount Holyoke Avenue in the Pacific Palisades area of Los Angeles. Darla Jones and her late husband, Stanley Jones, formed MHH for the purpose of developing the property.[1] Schelbert owns a home across the street from the property.

MHH filed an application with the City for approval of a preliminary parcel map and a coastal development permit for a proposed four-lot subdivision on the property in September 1990. After review of grading reports and a public hearing, the City's deputy advisory agency conditionally approved the parcel map and coastal development permit. A group of neighboring property owners appealed that approval to City's Board of Zoning Appeals, which disapproved the parcel map and coastal development permit. MHH's appeal to the Los Angeles City Council was denied. MHH and the Joneses filed a superior court action challenging the City's disapproval. On December 22, 1993 the court issued a peremptory writ of mandate commanding the government respondents to set aside their decision and to reconsider the matter.

The city council referred the matter to its planning and land use management committee in January 1994. After Schelbert and others raised concerns regarding the impact of the proposed plan on views, MHH agreed to reduce the number of lots from four to three and to accept conditions of approval providing greater setbacks and view corridors between future homes. MHH submitted a revised three-lot subdivision plan to the City, but the City's building department staff raised new concerns regarding soils and geology reports that previously had been approved. For the next four years additional reports were prepared, reviewed and finally approved by the building department on July 17, 1998. On March 16, 1999 the City's planning and land use

---

[1] Stanley Jones died during the pendency of these proceedings.

management committee recommended approval of the parcel map and coastal development permit for the three-lot subdivision. The City approved the revised proposal on April 7, 1999.

### 2. *The Appeal to the Commission and Substantial Issue Determination*

On June 14, 1999 Schelbert appealed the City's approval to the Commission, which had jurisdiction because the property is located within the coastal zone. In a notification of appeal dated June 17, 1999, the Commission advised the City appeal had been filed and stated the matter had been tentatively set for a hearing during the Commission's meeting on July 13 to July 16, 1999. The notice directed the City to provide the Commission with copies of all relevant documents and materials used in considering the proposed development within five working days and stated a "Commission staff report and notice of the hearing will be forwarded to you prior to the hearing." The notice stated on the bottom "cc" to, among others, the Joneses and counsel for MHH. In a public hearing notice dated June 30, 1999 the Commission advised the hearing on the appeal had been scheduled for July 13, 1999. The notice identified the applicant as "Mt. Holyoke Homes, Ltd. Et. Al., Attn: C/O Stanley and Darla Jones."

At its July 13, 1999 meeting the Commission opened and continued the public hearing on Schelbert's appeal because the City, for reasons unexplained in the record, had failed to provide any documents or materials to the Commission. Neither counsel for MHH nor any of its representatives attended the hearing. According to a declaration prepared by counsel for MHH, they had not been provided with a hearing notice or staff report prior to the meeting and were unaware a hearing on the appeal would take place at that meeting.

Although the City had been directed—indeed, was obligated pursuant to Commission regulations (Cal. Code Regs., tit. 14, § 13320)[2]—to provide the Commission with all relevant documents the city council had considered in approving MHH's proposed plan within five working days of receipt of the June 17, 1999 notification, it was MHH that arranged to have copies of the city council's file made by a bonded and licensed copy service and transmitted to the Commission on December 6, 1999. The file consisted of more than 2,000 pages of documents, maps, reports, photographs and other materials.

---

[2] Title 14 of the California Code of Regulations, section 13320, provides, "Upon receipt in the commission office of a timely valid appeal by a qualified appellant the executive director of the commission shall notify the permit applicant and the affected local government that the operation and effect of the coastal development permit has been stayed pending final action on the appeal by the commission as required by Section 30623 of the Public Resources Code. Within five (5) working days of the receipt of a notice of appeal from the commission, the affected local government shall deliver to the executive director of the commission all relevant documents and materials used by the local government in its consideration of the coastal development permit application."

On January 14, 2000 Commission staff informed MHH the city council file did not appear to contain all the substantive material on which the city council had based its decision, including certain technical data. MHH agreed to arrange with the City planning department to have the entire coastal permit file and parcel map file copied and sent to the Commission. On March 29, 2000 the files were transmitted to the Commission, and in the transmittal letter MHH stated it was in the process of obtaining signatures on a stipulation among the City, MHH and Schelbert "that the Coastal Commission has now been provided with all relevant documents and materials used by the City in its consideration of the subject coastal permit application." On April 3, 2000 MHH provided the Commission with the fully executed stipulation.

On April 6, 2000 the Commission issued a letter stating a hearing was tentatively scheduled in the matter during the Commission's May 9 to May 12, 2000 meeting. On May 4, 2000 MHH submitted to the Commission an 11-page letter with supporting documentation arguing the appeal did not present a substantial issue warranting a hearing as provided by Public Resources Code section 30625, subdivision (b) (Commission shall hear an appeal unless it determines no statutorily defined substantial issue exists).[3] On May 9, 2000 the Commission determined the appeal raised substantial issues regarding visual impacts, geologic hazards and potential land form alteration and advised the matter would be reviewed de novo at a later date.

### 3. The Commission's Denial of the Parcel Map and Coastal Development Permit

From August 2000 through April 2003 MHH provided additional information to the Commission in response to several requests by the Commission and its staff. (Approximately 17 months elapsed between one of the requests and MHH's response, which included foundation plans and a letter clarifying a seismic analysis.) By public hearing notice dated May 23, 2003 the Commission advised the hearing on MHH's proposed development would be on June 11, 2003. In a letter dated June 7, 2003 a consultant for MHH argued the Commission should approve the three-lot subdivision without imposing the Commission staff's recommended special conditions. The consultant also argued, for the first time, the Commission had failed almost three years earlier to timely hold the hearing at which it was determined the appeal presented a substantial issue: "The Commission . . . neither set nor held the hearing required by § 30621(a)[4] within the required 49 days and obtained no

---

[3] Statutory references are to the Public Resources Code.

[4] Section 30621, subdivision (a), provides in part, "A hearing on any coastal development permit application or an appeal shall be set no later than 49 days after the date on which the application or appeal is filed with the commission." Section 30625, subdivision (a), prescribes the consequences for failure to hold a timely hearing on an appeal: "[I]f no action is taken

waiver of said time frame from our client or its representative. Our client therefore reserves its legal rights relating to the timely hearing provided by the Coastal Act."

At the June 11, 2003 hearing the Commission denied MHH's proposed three-lot subdivision, contrary to staff's recommendation the project be approved with conditions imposed to address the geologic hazards and visual impacts of the project. Although MHH's counsel and consultant testified at the hearing, they did not argue the Commission had failed to timely determine Schelbert's appeal presented a substantial issue.

In a letter dated July 9, 2003 MHH requested the Commission reconsider its disapproval on the ground, among others, the Commission had lost jurisdiction of the matter by failing to decide whether the appeal presented a substantial issue by August 2, 1999—49 days from the date Schelbert filed her appeal. MHH alternatively contended, even if the 49-day period were measured from the date the Commission received all relevant documents, contrary to the express language of section 30621, subdivision (a), the Commission still had failed to make the substantial issue determination by January 25, 2000—49 days from the date MHH provided the city council's file to the Commission. In its letter MHH noted the Court of Appeal had recently ruled in *Encinitas Country Day School, Inc. v. California Coastal Com.* (2003) 108 Cal.App.4th 575, 578 [133 Cal.Rptr.2d 551] (*Encinitas*) the Commission's practice of opening and continuing a hearing within the 49-day period did not comply with section 30621. On September 19, 2003, however, MHH "request[ed] that the matter be continued for an indefinite period of time in order to facilitate discussion and consideration of alternatives."

4. *The Petition for Writ of Mandate and Complaint*

MHH and the Joneses filed a verified petition for writ of mandate and complaint for declaratory relief and inverse condemnation against the Commission, naming Schelbert as real party in interest, on July 31, 2003. The petition and complaint requested a writ of administrative mandamus on the ground, among others, the Commission lacked jurisdiction to disapprove the project because it had failed to hear Schelbert's appeal in a timely manner.

In May 2004 MHH, the Joneses and the Commission entered into a tentative settlement, which provided the decision disapproving MHH's proposed three-lot subdivision would be vacated and the Commission would hold a new hearing on an alternative three-lot site plan with a larger view

within the time limit specified in Sections 30621 and 30622, the decision of the local government or port governing body, as the case may be, shall become final, unless the time limit in Section 30621 or 30622 is waived by the applicant."

corridor. If the Commission approved the alternative site plan, MHH and the Joneses agreed to dismiss their action with prejudice. The settlement agreement was presented to the superior court as a stipulation and proposed order vacating the Commission's June 11, 2003 decision and remanding to the Commission for a new public hearing, which the superior court signed.

At a status conference held soon after the stipulation was signed by the court, Schelbert explained she had not been a party to the settlement negotiations or the stipulation and objected to setting aside the Commission's decision. The court acknowledged it had not noticed Schelbert had not agreed to or signed the stipulation and withdrew its approval. The court then deemed the stipulation a joint motion by MHH, the Joneses and the Commission to approve the settlement and remand to the Commission and gave the parties an opportunity to submit additional briefing. After further proceedings, the court ordered the matter remanded to the Commission for a new public hearing, but entered judgment dismissing MHH and the Joneses' petition over their objections. On appeal, this court reversed the superior court's decision, holding the court abused its discretion by dismissing MHH and the Joneses' lawsuit over their objection.[5] (*Mt. Holyoke Homes v. California Coastal Com.* (Nov. 23, 2005, B178633) [nonpub. opn.].)

Once MHH and the Joneses' petition was reinstated, the superior court ordered the parties to file briefs and thereafter heard oral argument. On November 11, 2006 the court issued a peremptory writ of mandate ordering the Commission to set aside its disapproval of MHH's parcel map and coastal development permit and to dismiss Schelbert's appeal on the ground the Commission had lost jurisdiction because it failed to determine the appeal presented a substantial issue within the 49-day period mandated by statute: "Here, Petitioners [*sic*] filed the appeal on June 14, 1999, and the Commission did what it had habitually done previous to *Encinitas*—it opened the public hearing within the 49-day limit, and then continued it. The Commission did not make its substantial issue determination until almost one year later, on May 9, 2000, and almost 5 months after [MHH] had provided six large folders of City approved documents to it. [¶] Pursuant to the rule

[5] Shortly after entry of the judgment dismissing the petition and complaint in the instant matter, the Commission conducted a public hearing on the revised three-lot plan and thereafter voted to disapprove the proposed plan notwithstanding Commission staff's recommendation it be approved. On December 10, 2004 MHH and the Joneses filed a new petition for writ of mandate and complaint in the superior court, which was amended on March 14, 2005, challenging the Commission's denial of their revised plan (*Mt. Holyoke Homes, LP v. California Coastal Com.* (Super. Ct. L.A. County, 2004, No. BS093960)). The pleading reasserted many of the allegations contained in the writ petition and complaint in the instant matter, but was directed to the revised three-lot plan. Although the trial court consolidated the two cases after our decision reversing the superior court's dismissal of the instant matter, MHH did not pursue BS093960, characterizing "the 'compromise plan' " as "no longer relevant and . . . null and void."

articulated by the court in *Encinitas*, the Commission lost jurisdiction of the matter, and pursuant to Public Resources Code section 30625, Petitioners' original [coastal development permit] application, granted by the City, became final." The court rejected the Commission and Schelbert's argument MHH had waived the 49-day rule by waiting until June 7, 2003 to raise the issue and complying with the Commission's repeated requests for additional documents.

## CONTENTIONS

The Commission and/or Schelbert contend, among other arguments, the 49-day rule in section 30621 was not triggered until the Commission received all relevant documents used by the City in making its decision to approve the coastal development permit and the Commission acted within 49 days of receipt of the stipulation transmitted on April 3, 2004 assuring the Commission it had received all such relevant documents; the superior court's finding MHH had not waived the 49-day time limit was not supported by substantial evidence; MHH failed to exhaust its administrative remedies; and MHH should be estopped from asserting the Commission lacked jurisdiction.

## DISCUSSION

### 1. *The 49-day Time Limit and* Encinitas

In *Encinitas, supra,* 108 Cal.App.4th at pages 578–579, the City of Encinitas had approved Encinitas Country Day School, Inc.'s proposal to build a 432-student elementary school. Multiple appeals of the approval were received by the Commission on December 10, 1998. On December 17, 1998 Commission staff issued a staff report stating a hearing was required to be set within 49 days of the date of appeal but recommending the Commission open and continue the matter at its January 1999 meeting because it had not yet received all relevant documents from the city. The Commission followed staff's recommendation and continued the matter to its February 1999 meeting. (*Id.* at pp. 579–580.) At its February 4, 1999 meeting, held 56 days after the appeals were filed, the Commission, again in accordance with staff's recommendation, found the appeals presented a substantial issue and denied approval of the project. (*Id.* at p. 580.)

Encinitas Country Day School filed a first amended petition for writ of mandate and complaint in June 1999. The superior court granted the writ of mandate and ordered the Commission's denial be set aside and the city's approval of the coastal development permit be final on the ground the Commission had failed to rule within the 49-day jurisdictional period. (*Encinitas, supra,* 108 Cal.App.4th at p. 581.)

The Fourth District Court of Appeal affirmed the superior court's decision, explaining the Commission had erroneously interpreted its decision in *Coronado Yacht Club v. California Coastal Com.* (1993) 13 Cal.App.4th 860 [17 Cal.Rptr.2d 10] (*Coronado Yacht Club*) to permit the Commission to satisfy the 49-day rule by merely opening and continuing the hearing within 49 days of the appeals being filed: "Not only did the *Coronado Yacht Club* case not so hold, the case is also clearly distinguishable. In *Coronado Yacht Club* the issue was whether the Commission complied with the 49-day rule when the Commission during the 49-day period decided whether the appeal raised a substantial issue and therefore should be heard (see § 30625, subd. (b)) but continued the hearing on the merits of the appeal to a date beyond the 49-day period. We found reasonable the Commission's interpretation of the statute's requirement that a hearing be ' "set" to mean to be "held" within 49 days of the filing of the appeal, rather than merely being "scheduled." ' [Citation.] '[M]indful [that] the statutory scheme provides for but one public hearing on an appeal,' we held that 'the Commission's administrative construction is reasonable, that it need only to open the hearing and if three commissioners desire a debate on the question of substantial issue, it need only resolve the matter of its jurisdiction and then continue the matter in a timely fashion that will guarantee its timely action on the appeal consistent with the implied legislative intent to avoid bureaucratic delay.' " (*Encinitas, supra*, 108 Cal.App.4th at p. 584.)

*Encinitas* did not change the law. The court merely held the Commission must comply with the law as enunciated in *Coronado Yacht Club*. (*Encinitas, supra*, 108 Cal.App.4th at p. 585 ["[i]n *Coronado Yacht Club* we . . . specifically observed that a procedure like the one used here would be inconsistent with the Legislature's intent"].) Moreover, neither *Encinitas* nor *Coronado* addressed the issue presented in this appeal—whether, notwithstanding the clear language in section 30621 that "[a] hearing on . . . an appeal shall be set no later than 49 days after the date on which the application or appeal *is filed* with the commission," the triggering date is extended if the Commission has not received all relevant documents from the local agency within five working days of requesting them. (Italics added.) Although the Commission had asserted this argument in *Encinitas*, the court did not reach it because it held the Commission had received all relevant documents within the applicable time period. (*Encinitas*, at pp. 585–586.) We also need not decide this issue because we hold MHH is estopped from contesting the Commission's jurisdiction. Our extended discussion of *Encinitas* is relevant to that conclusion.

### 2. *MHH Is Estopped to Contest the Commission's Jurisdiction*

#### a. *Standard of review*

In her opposition to MHH's memorandum of points and authorities in support of its petition for writ of mandate, Schelbert argued that by executing the stipulation in April 2000 and failing to raise any claim the Commission had lost jurisdiction until June 2003, among other conduct, MHH waived its right to contest the Commission's jurisdiction or alternatively should be estopped from invoking the 49-day time limit. The superior court concluded MHH had not waived its right to contest jurisdiction, but did not address estoppel. Schelbert again raises both waiver and estoppel in her appeal.

Although equitable estoppel is generally a question of fact, it is a question of law when the facts are undisputed and only one reasonable conclusion can be drawn from them. (*Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129]; *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360 [56 Cal.Rptr.3d 591]; cf. *Lentz v. McMahon* (1989) 49 Cal.3d 393, 403 [261 Cal.Rptr. 310, 777 P.2d 83] ["existence of estoppel is largely a question of fact, although the weighing of policy concerns that must be conducted in a case of estoppel against the government is in part a question of law"].) Notwithstanding estoppel to contest jurisdiction differs from equitable estoppel, as discussed below, the distinction between the two estoppel doctrines does not warrant a different standard of review. (Cf. *Feduniak*, at p. 1381 [" '[l]aches is a question of fact for the trial court, but may be decided as a matter of law where . . . the relevant facts are undisputed' "].) The relevant facts underlying Schelbert's argument MHH should be estopped to contest the Commission's jurisdiction are undisputed, and thus we review the issue de novo.

#### b. *An act made in excess of jurisdiction is voidable*

■ There are essentially two kinds of jurisdictional errors with different consequences.[6] " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' " (*People v.*

---

[6] Although our discussion of jurisdiction is in the context of a trial court's jurisdiction over an action, the principles are equally applicable to an administrative agency's jurisdiction. (See *NBS Imaging Systems, Inc. v. State Bd. of Control* (1997) 60 Cal.App.4th 328, 335 [70 Cal.Rptr.2d 237] [" 'court's review of the administrative decision extends "to the questions whether the [administrative agency] has proceeded without, or in excess of jurisdiction . . ." ' "].)

*American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 [16 Cal.Rptr.3d 76, 93 P.3d 1020].) However, the phrase "lack of jurisdiction" "may also 'be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable." (*Id.* at p. 661.)

In the case at bar the Commission had subject matter jurisdiction as long as Schelbert's appeal presented a substantial issue. Section 30625, subdivision (a), provides in part, "Except as otherwise specifically provided in subdivision (a) of Section 30602, any appealable action on a coastal development permit . . . may be appealed to the commission by an applicant, any aggrieved person, or any two members of the commission." Pursuant to section 30625, subdivision (b), "The commission shall hear an appeal unless it determines" that no substantial issue exists. Thus, whether the Commission improperly decided the merits of Schelbert's appeal because, in accordance with *Encinitas, supra,* 108 Cal.App.4th 575, it did not hold a timely hearing to determine if Schelbert's appeal presented a substantial issue is a question whether the Commission acted in excess of jurisdiction. (See *Edwards v. Steele* (1979) 25 Cal.3d 406, 412 [158 Cal.Rptr. 662, 599 P.2d 1365] ["seemingly mandatory language need not be construed as jurisdictional where to do so might well defeat the very purpose of the enactment or destroy the rights of innocent aggrieved parties"]; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147 [43 Cal.Rptr.2d 693, 899 P.2d 79] ["[w]hen the Legislature has specified a time within which an administrative board is to render a decision, that time limit may be mandatory in the obligatory sense, but this 'does not necessarily mean that a failure to comply with its provisions causes a loss of jurisdiction' "]; cf. *People v. Allen* (2007) 42 Cal.4th 91, 101–105 [64 Cal.Rptr.3d 124, 164 P.3d 557] [time provision held mandatory but its violation did not deprive court of fundamental jurisdiction]; see generally 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 103, pp. 676–678 [explaining whether statutes of limitations and other time provisions are "mandatory" or "directory"].)[7]

---

[7] Our conclusion the Commission's failure to act within the prescribed statutory period constitutes only an act in excess of its jurisdiction, rather than divesting it of jurisdiction in the fundamental sense, is reinforecd by the Legislature's express authorization for a waiver of the time limit by the applicant. (§ 30625, subd. (a); see *Hagan Engineering, Inc. v. Mills* (2003) 115 Cal.App.4th 1004, 1008 [9 Cal.Rptr.3d 723] ["[s]ubject matter jurisdiction cannot be conferred by consent, waiver or estoppel"].)

 A party may be precluded from setting aside a voidable act or judgment made in excess of jurisdiction by " 'principles of estoppel.' " (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at p. 661.) "When . . . the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when 'To hold otherwise would permit the parties to trifle with the courts.' " (*In re Griffin* (1967) 67 Cal.2d 343, 347–348 [62 Cal.Rptr. 1, 431 P.2d 625]; accord, *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120, 125 [97 Cal.Rptr.2d 858]; see generally *In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 994–995 [39 Cal.Rptr.3d 365].)

### c. *By its conduct, MHH acquiesced in the Commission's exercise of jurisdiction*

MHH contends the Commission lost jurisdiction of Schelbert's appeal at the earliest on August 2, 1999—49 days from the date Schelbert filed her appeal—or at the latest on January 25, 2000—49 days from the date it provided the city council's file to the Commission. MHH, however, did not question the Commission's jurisdiction until June 7, 2003—three and one-half years after the latest date on which it contends the Commission lost jurisdiction. During that time, MHH readily provided information to the Commission in response to several requests; and its actions over such an extended period of time constituted consent (acquiescence) to jurisdiction or, alternatively, invited error. (See *California Coastal Com. v. Tahmassebi* (1998) 69 Cal.App.4th 255, 260 [81 Cal.Rptr.2d 321] [" '[i]t is settled that where a party by his conduct induces the commission of an error, under the doctrine of invited error he is estopped from asserting the alleged error as grounds for reversal' "]; *People v. Ruiz* (1990) 217 Cal.App.3d 574, 584 [265 Cal.Rptr. 886] ["an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time"]; cf. *Bel Mar Estates v. California Coastal Com.* (1981) 115 Cal.App.3d 936, 940 [171 Cal.Rptr. 773] ["A party cannot sit idly by and permit action to be taken and later say that it had not consented. Even in cases under section 1358 of the Penal Code, involving a constitutional right to a speedy trial, silence on the part of a defendant represented by counsel is regarded as a consent to a continuance."].)[8]

---

[8] To the extent *Klitgaard & Jones, Inc. v. San Diego Coast Regional Com.* (1975) 48 Cal.App.3d 99, 110 [121 Cal.Rptr. 650]—a case cited by Schelbert to support her estoppel

■ In response to the argument it is estopped from contesting the Commission's jurisdiction, MHH contends Schelbert was not ignorant of the true state of facts and did not rely upon MHH's conduct to her detriment. MHH's position confuses equitable estoppel with estoppel to contest jurisdiction. "A valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584 [80 Cal.Rptr.3d 83, 187 P.3d 934].) The doctrine of estoppel to contest jurisdiction, however, "provides that when a court has subject matter jurisdiction over an action, 'a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction.' " (*Ibid.*) It does not require reliance or ignorance by the party seeking to assert estoppel.

MHH's argument substantial evidence supports the superior court's finding it did not waive the 49-day time period is simply not relevant to estoppel. Although the terms waiver and estoppel are often used interchangeably, the doctrines are distinct, further complicated in this case because it involves estoppel to contest jurisdiction, not the more common doctrine of equitable estoppel. (See *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195, fn. 4 [8 Cal.Rptr.3d 517, 82 P.3d 727] ["the term 'waiver' has a number of meanings in statute and case law"]; *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 487 [81 Cal.Rptr.3d 72] [equitable estoppel "is akin to the doctrine of waiver, often invoked in the same breath, and sometimes confused with it"].) "While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right." (*St. Agnes Medical Center*, at p. 1195, fn. 4.) Here, the superior court's finding MHH did not waive the 49-day limit was based upon the concept of a voluntary relinquishment of a known right. The court stated, "The Commission has failed to prove by clear and convincing evidence that [MHH] knowingly relinquished a known right," in part because "*Encinitas* was not decided until 2003. Thus, not raising the issue was reasonable in light of the Commission's consistent longtime practice of 'opening' and 'continuing' hearings within the 49-day limit."

■ While we question the superior court's finding MHH did not relinquish a known right inasmuch as *Encinitas* did not effect a change in the

argument—suggests in dicta that conduct after the expiration of a statutory time period demonstrating consent or acquiescence in the exercise of jurisdiction cannot be the basis for a finding of estoppel, we respectfully disagree.

law, our differing view on that point is immaterial.[9] Estoppel to contest jurisdiction does not require the party know or understand the legal consequences of its action. Estoppel in this context is more akin to acquiescence or a forfeiture, which is "a failure to object or to invoke a right," not the "express relinquishment of a right or privilege." (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1 [55 Cal.Rptr.3d 716, 153 P.3d 282].) An analogous principle is well established in the context of personal jurisdiction. Once an action has commenced, a defendant who makes a general appearance without objecting to personal jurisdiction acquiesces in the court's exercise of jurisdiction and forfeits any future challenge to the court's power over him or her. (See *Sanchez v. Superior Court* (1988) 203 Cal.App.3d 1391, 1397 [250 Cal.Rptr. 787] [defendant consents to jurisdiction if general appearance is made in the California action; a general appearance occurs where party, either directly or through counsel, participates in action in some manner which recognizes the authority of the court to proceed]; *California Overseas Bank v. French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184 [201 Cal.Rptr. 400] [if defendant " 'raises any other question, or asks for any relief which can only be granted upon the hypothesis that the court has jurisdiction of his person, his appearance is general' "]; *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1757 [46 Cal.Rptr.2d 191] [taking part in case management activities alone is sufficient to constitute a general appearance].)

■ MHH clearly participated in the Commission's proceedings in a significant manner for several years, ostensibly recognizing the Commission's jurisdiction before asserting the Commission lost it. While MHH may have believed it was attempting to amicably resolve the Commission's concerns over its proposed three-lot subdivision and facilitate approval of its project, it nevertheless had an obligation to contest the Commission's jurisdiction promptly after the date on which it contends the Commission lost it.

There is a practical, as well as theoretical, reason for our refusal to permit MHH to delay questioning the Commission's authority while simultaneously

---

[9] There is no question MHH knew there was a potential issue regarding the Commission's jurisdiction in December 1999, even if it did not know how a court might rule on the Commission's position that not receiving all relevant documents within five working days of notice of the appeal changed the triggering date for the 49-day time clock. At the November 7, 2006 hearing on MHH's petition and complaint, MHH addressed Schelbert's argument the stipulation transmitted to the Commission on April 4, 2000 established that as the date the Commission had received all relevant documents, thus making timely the Commission's determination the appeal presented a substantial issue on May 9, 2000. MHH stated, "[T]here's nothing in the stipulation that states the date on which . . . all parties were agreed the Commission had all relevant documents. That was intentional because we didn't want to waive an argument that they had all documents as of December 1999. That was our position when we deposited the documents with the Commission, so it doesn't fix the date in any fashion in this agreement. . . . [I]t was carefully chosen language because it doesn't say that as of the date of the stipulation they now have all the documents; it just confirms that they had received them."

invoking its decisionmaking role. If MHH were not now estopped to contest the Commission's jurisdiction and the City's approval of its project were to be deemed final without a de novo hearing on the substantial issues raised by Schelbert's appeal, significant resources will have been expended over a period of several years for naught. Such conduct amounts to an unacceptable trifling with a public agency and the courts.

## DISPOSITION

The judgment is reversed. The Commission and Schelbert are to recover their costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied November 12, 2008, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 14, 2009, S168664. George, C. J., did not participate therein.